IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 1, 2015 at Jackson

## RONALD LESLIE MCKNIGHT v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Davidson County**
**No. 2011-F-1159     Cheryl Blackburn, Judge**

_____

**No. M2015-00096-CCA-R3-PC – Filed October 26, 2015**

_____

The petitioner, Ronald Leslie McKnight, appeals the denial of his bid for post-conviction relief from his 2011 Davidson County Criminal Court jury conviction of aggravated burglary, claiming that he was denied the effective assistance of counsel at trial. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROGER A. PAGE and TIMOTHY L. EASTER, JJ., joined.

Jesse Lords, Nashville, Tennessee, for the appellant, Ronald Leslie McKnight.

Herbert H. Slatery III, Attorney General and Reporter; Meredith DeVault, Assistant Attorney General; Glenn R. Funk, District Attorney General; and Rachel Sobrero, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

In November 2011, a Davidson County Criminal Court petit jury convicted the petitioner of one count of aggravated burglary, and the trial court ordered the petitioner to serve 15 years' incarceration consecutively to the remainder of a previous sentence. This court affirmed the conviction and sentence on direct appeal. *See State v. Ronald McKnight*, No. M2012-00573-CCA-R3-CD (Tenn. Crim. App., Nashville, Mar. 11, 2013), *perm. app. denied* (Tenn. July 10, 2013). The facts, as summarized by this court on direct appeal, established that the petitioner and his brother, Dejuane McKnight, broke into the victim's home and stole clothing and a television set. *See id.*, slip op. at 2. The men got into a Ford Taurus driven by a third man named Antwon Trice. Officers stopped the Taurus after a 15-minute police chase and discovered a flat screen television in the back that bore a serial number that matched a television box discovered inside the

victim's home. *See id.* The petitioner's brother testified that the petitioner "started the discussion and planning of the burglary" and that he and the petitioner "had stolen the television and that Antwon Trice waited in the getaway car while they were in the condominium." *Id.*, slip op. at 3.

Following the denial of his application for permission to appeal to the supreme court, the petitioner filed a timely petition for post-conviction relief, alleging, among other things, that he had been deprived of the effective assistance of counsel at trial. In an amended petition filed by post-conviction counsel, the petitioner specified that his counsel performed deficiently by failing to adequately investigate the case, failing to file a motion to suppress evidence obtained during the stop of the Taurus, and failing to adequately communicate with the petitioner and provide him a copy of the discovery materials.

At the September 29, 2014 evidentiary hearing, the petitioner testified that counsel never met with him at the jail, that he only saw trial counsel on court days, and that their meetings did not typically exceed five minutes. The petitioner said that counsel did not provide him with a copy of the discovery materials and communicated only a single, 10-year plea offer with him. He insisted that counsel did not discuss the State's evidence with him and did not apprise him of the strength of the State's case. The petitioner testified that he "filed numerous motions" and asked counsel to adopt them, but counsel refused. He said that he specifically asked counsel to file a motion to suppress evidence discovered during the stop of the Taurus. Counsel did not file a motion to suppress prior to trial but did make an oral suppression motion during the petitioner's trial.

During cross-examination, the petitioner acknowledged having come to court six times between the time that counsel was appointed to represent him and when his case went to trial. He conceded that counsel encouraged him to accept the State's offer of a 10-year sentence and that he rejected the offer, saying, "I wasn't going to take the ten no way. . . . [b]ecause I feel like I wasn't guilty of it." He admitted that there was no sentence the State could have offered to dissuade him from going to trial and stated that he "wasn't going to plead guilty." The petitioner acknowledged that he received a copy of his indictment prior to trial and that his attorney told him that Dejuane McKnight was going to testify against him. The petitioner testified that he wanted counsel to file a motion to suppress the evidence obtained during the stop of the Taurus on grounds that "the officer that pulled us over, he was off duty" and on the basis of Dejuane McKnight's testimony. He said that counsel told him that the officer's being off duty was not a ground for suppression. He admitted that counsel had no control over Dejuane McKnight's trial testimony.

Upon questioning by the post-conviction court, the petitioner clarified that trial counsel was appointed to his case in July 2011 and that the trial commenced on October 31, 2011. The petitioner also acknowledged that although the trial court denied counsel's in-trial motion to suppress, the court heard proof on the issue and addressed it on its merits.

Trial counsel testified that he was appointed to represent the petitioner on July 14, 2011, and that he met with the petitioner on the petitioner's court dates. He said that he did not meet with the petitioner other than on court dates because the petitioner was in the custody of the Department of Correction prior to his trial, which counsel described as "fairly atypical." He recalled that when he "came on board," the case "was basically at the end of settlement discussions." Counsel said that he spent "a good bit of time" with the petitioner "on several different occasions at first discussing sentencing, the offer, the risks, and the pros and cons as to whether to take the risk and obviously discussing the facts of the case in context of what you could get with what he was charged with."

Counsel testified that the petitioner's previous attorney provided him with the discovery materials and that it was his understanding that the petitioner already had a copy of the discovery materials. He described the case as "fairly factually simplistic" and noted that "[t]here weren't that many witnesses, there wasn't that much discovery." He said that he encouraged the petitioner to take the State's offer of a 10-year sentence with a 45 percent release eligibility percentage because the petitioner's "was a factually difficult case for the defense."

Regarding his failure to file a pretrial motion to suppress, counsel acknowledged that he should have filed the motion earlier but said that the information leading to his making the motion during trial came during the testimony of an officer who had not previously testified or written a report. He testified that he did not have "access to enough information to really make a determination of what happened" prior to the stop of the Taurus. Counsel said that the trial court denied his motion on the merits and that he did not believe the outcome would have been different if he had filed the motion prior to trial.

During cross-examination, trial counsel testified that the petitioner had been represented by two different attorneys before he was appointed to the petitioner's case and that he did not speak to the attorney who represented the petitioner at the preliminary hearing. He said that he did listen to a recording of the preliminary hearing. He reiterated that he did not provide the petitioner with a copy of the discovery materials but added that he was "pretty confident [the petitioner] had his own copy" and that the two "went page through page of" the discovery materials that counsel had. Regarding the

length and content of his meetings with the petitioner, counsel testified that the petitioner's "definition of meaningful" differed from counsel's.

At the conclusion of the hearing, the post-conviction court took the petition under advisement. In the written order denying relief, the court accredited trial counsel's testimony that he had lengthy meetings with the petitioner that included a thorough discussion of the discovery materials. The court noted that although counsel raised the suppression issue during trial instead of prior to trial, the court considered the motion on its merits and concluded that "there was no basis to suppress the evidence in light of the facts before the court even if the motion [had] been filed pre-trial."

In this timely appeal, the petitioner reiterates his claim of ineffective assistance of counsel, arguing that his counsel performed deficiently by failing to adequately communicate with the petitioner prior to trial, failing to adequately prepare for trial, and failing to file a pretrial motion to suppress the evidence seized following the stop of the Taurus. The State argues that counsel did not perform deficiently.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

A claim of ineffective assistance of counsel, specifically, is a mixed question of law and fact. *See Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015); *Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the

services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick*, 454 S.W.3d at 458 (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

In our view, the record supports the post-conviction court's determination that the petitioner failed to establish by clear and convincing evidence facts that support his claims of ineffective assistance of counsel. The trial court accredited counsel's testimony that he reviewed the discovery materials with the petitioner and that he fully apprised the petitioner of the strength of the State's case and potential punishments. That counsel did not provide the petitioner with a copy of the discovery materials, particularly given counsel's belief that the petitioner had been previously provided with a copy of the discovery materials, does not amount to deficient performance. Additionally, that counsel did not meet with the petitioner at the location of his incarceration does not, in and of itself, amount to deficient performance in light of counsel's accredited testimony that the two had lengthy, meaningful meetings on the petitioner's court dates. Finally, although counsel failed to file a motion to suppress prior to trial, counsel moved to suppress during the trial, and the trial court denied the motion on the merits despite its untimely filing. The petitioner failed to present any evidence that a motion filed prior to trial would have had more merit.

Accordingly, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE